UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**STEPHEN HAYES,** and
**CARLOS GARCIA,**
individually and behalf of others
similarly situated,

        Plaintiffs,

vs.

**XPO LAST MILE, INC.,**
A Foreign Profit Corporation,

        Defendant.

Hon. Robert J. Jonker

Case No. 1:17-cv-00319

---

| | |
|---|---|
| **AVANTI LAW GROUP, PLLC**<br>Robert Anthony Alvarez (P66954)<br>Kristin Sage (P81173)<br>Attorneys for Plaintiff<br>600 28th St. SW<br>Wyoming, MI 49509<br>(616) 257-6807<br>ralvarez@avantilaw.com | **JACKSON LEWIS P.C.**<br>Allan S. Rubin (P44420)<br>Attorneys for Defendant<br>2000 Town Center, Ste. 1650<br>Southfield, MI 48532<br>(248) 936-1930<br>RubinA@jacksonlewis.com |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF JOINT
MOTION FOR APPROVAL OF
PROPOSED SETTLEMENT AND
AN AWARD OF ATTORNEYS' FEES AND COSTS**

The Plaintiffs submit this memorandum in support of the joint motion seeking entry of a final order approving the settlement of this action pursuant to 29 U.S.C. §216(b) of the Fair Labor Standards Act ("FLSA"), including an incentive award for the named Plaintiffs, and an award of attorney's' fees and costs. Defendant has indicated that it does not oppose this memorandum of law.

        **I.**        **PROCEDURAL HISTORY**

On April 7, 2018, Plaintiffs, Steven Hayes and Carlos Garcia, filed a Complaint against Defendant XPO Last Mile, Inc. ("XPO") individually and on behalf of a purported collective/class, alleging violations of the FLSA. (ECF No. 1). Defendant was served with the Complaint in this matter on June 14, 2017. (ECF No. 9). Defendant requested additional time to respond to the complaint, which Plaintiffs agreed to making Defendant's response due July 21, 2017. (ECF No. 11). Defendant responded with a Motion to Compel Individual Arbitration and Dismiss and/or Stay the Litigation on July 21, 2017. (ECF No. 14). Defendant also filed a Motion to Stay Consideration of its Motion to Stay, arguing that the this Court should not Dismiss it's Motion to Compel until the Supreme Court has head and decided on a case Defendant believed to be similar. (ECF No. 15). After the filing of these Motions, Plaintiffs filed an amended complaint. (ECF No. 16). Plaintiffs also responded to both the Motion to Compel and Motion to Stay and spent considerable time drafting these responses. (ECF No. 20 and 21). The Court then held a Rule 16 scheduling conference, and Plaintiffs drafted and filed Joint Status Report in preparation for this hearing. (ECF No. 18) Plaintiffs also filed a Motion for Conditional Class Certification at this time, as well as Brief in Support of its Motion. (ECF No. 22 and ECF No. 23). At the Rule 16, this Court stated its inclination to deny both of Defendant's Motion. Shortly after, the Court issued a formal denial of the Motions. (ECF No. 24). The Court also denied Plaintiff's Motion for Conditional Class Certification, without prejudice, stating that it was better suited to be brought in conjunction with a Motion for Class Action Certification, at a later date. (ECF No. 28).

On September 5, 2017, Defendant again responded, but this time with a Motion to Dismiss. (ECF No. 29.) Plaintiffs responded by requesting the court allow them to amend their

Complaint[1] once again, and also requested additional time to work on their response, in case the Court did not allow them to amend their Complaint again. (ECF No. 35-38). The Court allowed Plaintiffs to amend their Complaint and denied the Motion to Dismiss as Plaintiffs would be filing a Second Amended Complaint. (ECF No. 39). Defendant renewed its Motion to Dismiss and Plaintiff responded to this Motion as well. (ECF No. 46 and 53). The parties also negotiated and agreed to a protective order during this time frame. (ECF No. 42 and 43). The Court denied the proposed protective order and instructed the parties to file a more narrowly tailored protective order. (ECF No. 46.) The Parties had to renegotiated and refiled a more narrow protective order. (ECF No. 48). After some modifications, the Court entered the protective order. (ECF No. 48 and 50). When the parties came to this settlement agreement, the Motion to Dismiss was still pending in front of the Court.

The parties also engaged in discovery during this time. Defendant sent voluminous discovery in this matter to both Plaintiffs. These discovery requests included 209 requests for production of documents, 39 Interrogatories and 135 Requests for Admissions. These voluminous discovery requests took many hours for Plaintiffs to respond to. Plaintiffs also sent discovery requests of their own. Shortly after Plaintiffs response to Defendant's discovery, Defendant sent a letter to Plaintiffs stating it believed Plaintiffs discovery responses were inadequate, and Plaintiffs responded to this letter and supplemented their discovery.

The parties also dedicated time to settlement negotiations. Plaintiffs started by calculating damages for these specific Plaintiffs, and sending a FRE 408 settlement letter to Defendant. The parties spoke via telephone multiple times and exchanged multiple emails attempting to come to

---

[1] Plaintiffs originally filed a Second Amended Complaint, and then agreed to strike it when Defense counsel pointed out there was no procedural right to do so, and that they would not consent to the filing of this complaint. (ECF No. 32 and 34).

a settlement in this matter in December 2017. Even though the parties agreed as to the amounts to be paid in early December, the parties spent additional time negotiating the terms of this agreement. Both parties have spent considerable time actively litigating and pursuing this case, and have vigorously represented their clients.

## II. THE CLAIMS AND DEFENSES

Plaintiffs' Second Amended Complaint alleges violations of the minimum wage and overtime provisions of the FLSA. Plaintiffs' also asserted claims for violations of Michigan's Workforce Opportunity Pay Act. M.C.L.A. §408.411. (ECF No. 40). The Defendant denies these allegations. (ECF No. 45). Defendant also contended that Plaintiff failed to state a claim and that parts of the Complaint should be dismissed. (ECF No. 46)

## III. SUMMARY OF THE SETTLEMENT TERMS

On December 11, 2017, the parties agreed to a specific amount for the settlement and finalized the terms of this mutually acceptable agreement on January 4, 2018. The Parties agreed to the following terms:

a. Payment to the 2 named Plaintiffs in the amount specified by the settlement agreement:

- This payment is about equal to what Plaintiffs believe they are owed and includes about 50% of the liquidated damages they would legally be entitled to under the statute. The parties believe this is fair considering the pending Motion to Dismiss and the uncertainty of the future of the litigation. This payment will be made within 14 days of dismissal of the case.

b. Payment to Plaintiffs' counsel's attorneys' fees and costs in the amount of specified by the settlement agreement which has already been disclosed to the court. This payment will be made within 14 days of dismissal of the case.

This settlement agreement contained many standard provision such as a mutual release and waiver of claims. This settlement agreement also contained a confidentiality provision which prevents Plaintiffs and it's counsel from disclosing the terms of the settlement agreement, or making any public statements about the settlement agreement. The terms of this agreement were vigorously negotiated.

### IV.     LEGAL ARGUMENT

**A.  Standard of Review**

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v. Mich. Bell Tel. Co.,* 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (J. Lawson) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).  Therefore, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.  If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal citations and quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354.

Courts often draw on Rule 23 case law to guide them in reviewing and approving FLSA settlements.  The Sixth Circuit has identified seven factors that should aid courts in the determination of whether a proposed FLSA settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class

representatives; (6) the reaction of absent class members; and (7) the public interest.

*Arrington*, 2012 U.S. Dist. LEXIS 157362, *2-3; *see also Crawford v. Lexington-Fayette Urban Cnty. Gov't*, CIV. A. 06-299-JBC, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) *(citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The above list is not exhaustive and courts do not necessarily apply all of the factors. Rather, the factors are guideposts used to determine the fairness of a proposed settlement. "A court applying these factors must do so in the context of the actual settlement." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *3.

**B.  The Proposed Settlement is Fair and Reasonable**

This matter was originally filed on April 7, 2018 (ECF No. 1). There were multiple dispositive motions that were filed, and Plaintiffs had to respond to these Motions and draft a Motion for Conditional Class certification. Additionally, copious amounts of discovery were exchanged with both sides spending considerable time drafting and responding to the same.

If the Court determines that Plaintiffs were paid properly and were not denied overtime compensation, Defendant will have successfully defended this case. However, if the Court determines that Plaintiffs were indeed denied minimum wage and overtime compensation, and that this action is ripe for both collective and class certification, the Plaintiffs' damages model could easily exceed hundreds of thousands of dollars when the Defendants liability for attorney fees is considered. The risk for both sides is great. The agreement reached herein reflects an understanding of that risk.

**a.  The Absence of Fraud or Collusion in the Settlement**

In the instant case, there is a bona fide dispute over whether Defendant violated the FLSA. As set forth above, Plaintiffs maintain that they were denied minimum wage and overtime compensation. Plaintiffs alleged that Defendant violated the FLSA because: (1) it failed to pay Plaintiffs a premium rate for hours worked over 40 in a workweek; and (2) they failed to pay Plaintiffs for every hour worked by paying plaintiffs a per day rate. Defendant asserts that Plaintiffs' claims are without merit.

There was no fraud or collusion in this settlement. The settlement will provide Plaintiffs with lost overtime wages, plus liquidated damages, and attorneys' fees and costs, and will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits of Plaintiff's claim. The settlement is based upon a compromise regarding the amount of overtime that the Plaintiffs' actually worked. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion as to the strengths and weaknesses of the minimum wage claim.

### b. Complexity, Expense, and Likely Duration of the Litigation

The complexity, expense, and length of continued litigation militate in favor of this settlement. Both sides acknowledge that the Parties' respective positions were substantially complicated and uncertain due to numerous factual disputes and legal theories. Should this matter continue, the Court will be required to rule on the following legal issues: (1) whether based upon the payroll records provided could the Court come to the conclusion that the plaintiffs were actually paid a minimum wage; and (2) whether based on the piece rate paid were the plaintiffs paid a premium rate for all hours worked over 40.

### c. Amount of Discovery Engaged in by the Parties

As discussed above, the Parties engaged in extensive discovery. The Parties reviewed this information, shared it with their respective clients, had discussions about it, and ultimately used it to evaluate the merits of their respective claims and defenses. Based upon these records, Plaintiffs created detailed damage calculations, which were exchanged with Defendant. Plaintiffs also spent countless hours responded to the over 300 individual discovery requests, and then supplementing these answers at the requests of the Defendants. The settlement here is based on accurate calculations of Plaintiffs' overtime damages.

### d. Likelihood of Success on the Merits

Plaintiffs' likelihood of success on the merits and the amount they would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. There are a number of legal and factual issues that, if decided in Defendant's favor, would preclude Plaintiff from making a recovery. Most notably, if it is determined that Plaintiffs were paid overtime wages properly, then Plaintiffs would recover nothing.

Furthermore, the range of possible recovery by Plaintiffs is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both Parties, the specific amount of their recovery is uncertain. Once the Plaintiffs are found to be the prevailing party the Defendant would be responsible for the reasonable attorney fees necessary to reach that conclusion which amount would be substantial, and could easily dwarf the attorneys fees that have already been assessed in this matter. Thus, this proposed settlement is a fair and reasonable settlement in the relation to the potential risks and recovery in this case.

### e. The Opinions of Class Counsel and the Class Representatives

The next factor for consideration is the professional judgment of the experienced trial counsel participating in this litigation. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000). Counsel for both parties has extensive experience litigating FLSA collective and class action cases across the country. Both Plaintiffs' Counsel and Defense Counsel sincerely believe that this settlement is in the best interest of all parties involved, including all of the Plaintiffs.

Plaintiffs' counsel and the Named Plaintiffs are of the opinion that this proposed settlement is a fair and reasonable compromise of the disputed issues.

### f. The Public Interest

The public interest is served by the proposed settlement as it serves the purpose and intent of Congress in enacting the FLSA — "to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)). Also, see *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *24 (S.D. Ohio May 30, 2012) (drawing an end to "potentially long and protracted litigation" by virtue of a settlement agreement weighs in the favor of public interest.)

### V. PLAINTIFFS' COUNSEL IS ENTITLED TO THEIR NEGOTIATED FEES AND COSTS

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). An award of attorneys' fees to a

prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Congress enacted fee-shifting statutes in order to ensure that federal rights are adequately enforced. Under a fee-shifting statute, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious" action to vindicate the rights protected under the statute. *Perdue v. Kenny A.*,130 S. Ct. 1662, 1672 (2010). "Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993). The Supreme Court has stated that there is a "strong presumption" that the lodestar figure represents a reasonable attorneys' fee, which may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn,*130 S. Ct. 1662 (2010).

Moreover, "[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Spencer v. Cent. Servs., LLC*, 2012 WL 142978, *11 (D. Md. Jan. 13, 2012). The FLSA is a remedial statute that "'has been construed liberally to apply to the furthest reaches consistent with congressional direction.'" *Johnston v. Spacefone Corp.*, 706 F.2d 1178, 1182 (11th Cir.1983) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243 (1959)). Courts have long recognized that to achieve the remedial goal of

the FLSA, attorneys' fees must be awarded. Awarding employees their attorneys' fees is necessary to "provide an adequate economic incentive for private attorneys" to take FLSA cases and "thereby to ensure competent legal representation for legitimate claims." *Odil v. Evans*, 2005 WL 3591962, at *3 (M.D. Ga. 2005). The vast majority of FLSA claims deal with working class people who ordinarily would not have the financial resources to pay an attorney to pursue their overtime or minimum wage claims. This is especially true given that most FLSA claims do not involve significant amounts of money and often times the attorneys' fees are more than the FLSA claim itself.

Here, Plaintiffs' counsel's attorneys' fees and costs are based upon their lodestar through the settlement process and are reasonable given the complex legal theories presented in the case, the amount of resources expended to investigate, research, and analyze Plaintiffs' claims, responding to multiple Motions to Dismiss, the filing of Plaintiffs' own Motion for Conditional Class certification and the extensive discovery exchanged in this matter. Specifically, Plaintiffs' counsel has litigated this case since April of 2017, which has entailed: drafting pleadings, drafting and responding to motions, preparing and responding to written discovery, and negotiating settlement, travelling, researching, writing, and more. This case has been fought hard by both sides. The activities undertook in litigating this case and reaching the present agreement were necessary and time consuming.

The fees are consistent with the lodestar amount. The lodestar amount is the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). As to the time and labor required for this litigation, attached to this Motion as *Exhibit A* are the Declaration of Robert Alvarez (lead counsel) outlining the attorneys' fees

and litigation expenses incurred in this action and the reasonableness of said fees and expense as well as a copy of the retainer agreement. (Exhibit A, Exhibit B). At the time this motion was drafted, Plaintiffs' Counsel has expended 120.4 hours litigating this case.  The settlement agreement before the court seeks $25,000.00 in attorney fees for the 120.4 hours Plaintiffs' Counsel invested in this case.  Based on these numbers, Plaintiffs' Counsels' Lodestar amount is an average of $207.64 per hour (25,000 / 120.4 hours = $207.64 per hour).  Surely, given the complex nature of this lawsuit and the pedigree of Plaintiffs' Counsel, this is a reasonable amount.[2]  Lead counsel, Mr. Alvarez, has been awarded a rate of $350 per hour in multiple cases. See e.g. *Alvarez v. Davies d/b/a PD Construction*, (1:15-cv-417 at PageID.38) ("requesting the Court approve an hourly rate of $350"), (Id at PageID.48) (magistrate recommendation "that the amount requested is appropriate and reasonable"), (Id at Page.ID.49) (approving recommendation). See also *Munoz v. Rodriguez*, (1:15-cv-424) (same).

Plaintiffs submit that their attorneys' fees and costs are more than reasonable and should be approved.  The Sixth Circuit has held that "[a] reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

## VI.    CONCLUSION

Both sides compromised on key claims and defenses and the proposed settlement represents a true compromise as to damages and the available evidence.  This settlement represents an arm's-length negotiation by counsel.  It provides relief to Plaintiffs, and eliminates

---

[2]  Plaintiff's counsel makes note of the fact that the retainer agreement indicates that Plaintiff's counsel will be entitled to a percentage of the award PLUS his attorney fees. However, Plaintiff's counsel is only seeking the fees negotiated through this agreement and will not be seeking any additional percentage of the award from the Plaintiffs.

the inherent risks both sides would bear if this litigation were to continue. Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute, approve the settlement and enter the proposed stipulated order dismissing this case.

Dated: January 22, 2018

By: *Robert Anthony Alvarez*

Robert Anthony Alvarez (P66954)
AVANTI LAW GROUP, PLLC
Counsel for Plaintiff
600 28th Street SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2018 , I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Robert Anthony Alvarez*